# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON BETHUNE, | ) | Case No. 1:24-cv-848 |
| | ) | Case No. 1:21-cr-536 |
| Petitioner, | ) | |
| | ) | Judge J. Philip Calabrese |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## OPINION AND ORDER

After a jury found Petitioner Brandon Bethune guilty of knowing possession of ammunition as a felon, the Court sentenced him to a total prison term of 100 months. Mr. Bethune exhausted his remedies on direct appeal and now—proceeding *pro se*—moves to vacate, set aside, or correct his sentencing under 28 U.S.C. § 2255, arguing ineffective assistance of counsel in violation of his Sixth Amendment rights. For reasons that follow, the Court **DENIES** Petitioner's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Arrest and Indictment

In the early afternoon on March 20, 2021, Cleveland Police Department officers responded to a radio call from Margo White, the mother of one of Mr. Bethune's children, regarding domestic violence threats. (ECF No. 48, ¶ 6, PageID#246.) White reported that when Mr. Bethune dropped off baby food at 8:00 a.m. that morning, she and Mr. Bethune had an argument. (*Id.*, ¶ 7, PageID #246.) During that argument, Mr. Bethune threatened Ms. White with a firearm, pointing it at her while saying,

"There's a bullet lodged in the chamber." (*Id.*) Ms. White told the responding police officers that Mr. Bethune was in her apartment, and she consented to a search of her apartment so that the officers could locate and detain Mr. Bethune. (*Id.*, ¶ 8, PageID #246.)

When the officers entered the apartment, they encountered Mr. Bethune, who initially refused to identify himself. (*Id.*) After the officers identified Mr. Bethune anyway, they tried to detain and arrest him, but Mr. Bethune resisted. (*Id.*) As the officers placed Mr. Bethune in handcuffs, he informed them that he had a firearm in his waistband. (*Id.*) One of the officers located a .380 ACP Hi-Point Model CF firearm in Mr. Bethune's waistband and secured it. (*Id.*; ECF No. 58, PageID #502 & #530.) The officer determined that the firearm did not contain a magazine and further determined—upon attempting to clear the chamber—that the firearm was inoperable because an FC 9mm Luger round was lodged in the chamber and would not eject. (ECF No. 58, PageID #504 & #533.)

After the other officers successfully handcuffed Mr. Bethune, they tried to lead him downstairs, but Mr. Bethune "was still trying to give [them] a little fight." (*Id.*, PageID #377.) When the officers were finally able to get Mr. Bethune downstairs and outside, he struggled against the officers' attempts to conduct a pat-down search of his person outside the police car. (*Id.*, PageID #380–81.) Although the pat-down at the police car did reveal Mr. Bethune's phone, keys, and some money, the officers were not able to complete the pat-down because of "the way he was struggling and . . . fighting back." (*Id.*, PageID #381.) The officers seated Mr. Bethune in the

police car despite his continued combativeness and transported him to the county jail. (*Id.*, PageID #389.) Once inside the jail, Mr. Bethune "bec[ame] irate again" and resumed "issuing verbal threats" toward the officers. (*Id.*, PageID #396 & #450.)

Cuyahoga County Sheriff's Department Corporal Brian Ciurlik, who was on security duty at the county jail, stepped in to de-escalate the situation—as was standard practice—and took custody of Mr. Bethune, informing the police officers that the Sheriff's Department would "handle it from here." (*Id.*, PageID #392 & #475–78.) Then, Corporal Ciurlik performed a pat-down search of Mr. Bethune, during which he located a magazine containing four live rounds in Mr. Bethune's right pocket. (*Id.*, PageID #478.) The magazine fit the make and model of the firearm found on Mr. Bethune's person. (*Id.*, PageID #542–43.) Three of the live rounds were .380 ACP ammunition—the same caliber as the firearm found on Mr. Bethune's person. (*Id.*, PageID #526–27.) The last round of ammunition in the magazine was an FC 9mm Luger round—the same kind of round as the one lodged in the chamber of Mr. Bethune's firearm. (*Id.*, PageID #530–31.) Corporal Ciurlik passed the magazine to Cuyahoga County Sheriff's Department Corporal Antonio Brunello for brief safekeeping until he was able to retrieve possession of it, never losing sight of the magazine in the process. (*Id.*, PageID #478–79.) Corporal Ciurlik then retrieved the magazine from Corporal Brunello, placed it with the rounds into an evidence bag, conveyed the bag to his supervising sergeant, and wrote a report. (*Id.*, PageID #479.)

In June 2021, a task force officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives submitted an affidavit that served as the basis for the criminal

complaint in this case.  (ECF No. 1-1, PageID#2–5.)  The task force officer's affidavit erroneously stated that the firearm that officers confiscated from Mr. Bethune during his arrest "was loaded with four bullets" when, in fact, the ammunition was not loaded in the firearm but rather found separately.  (*Id.*, ¶ 5, PageID #2.)  On July 14, 2021, a grand jury indicted Mr. Bethune for knowingly possessing four rounds of ammunition as a felon.  (ECF No. 10, PageID #33–34.)

### B.    Pretrial Hearings

On August 24, 2021, at the first status conference in the case, the United States informed the Court that all discovery had been turned over to Mr. Bethune's defense attorney.  Defense counsel raised the issue of the amount of ammunition found on Mr. Bethune—specifically noting that Mr. Bethune believed there had been just one bullet on his person—and asked the Court for more time to review the discovery. Based on these discussions and to allow for more time to review the discovery, the Court continued the status conference until October 2021.

On two separate occasions in status conferences on October 13, 2021 and November 30, 2021, the United States informed the Court that it had produced all discovery.  When the Court asked defense counsel to confirm, deny, or otherwise correct the assertion that all discovery had been turned over in these status conferences, she responded in the affirmative both times.

During the final pretrial conference on March 17, 2022, the Court asked Mr. Bethune if he was satisfied with the representation he had received from defense counsel.  Mr. Bethune replied that he was.  At the conclusion of the hearing, the Court gave Mr. Bethune the opportunity to ask any question he wanted.  Mr. Bethune told

defense counsel that he did not have anything, and she informed the Court of the same.

### C.    Jury Trial

At trial, the United States presented the testimony of the police officers who arrested and patted down Mr. Bethune outside the police car, Cuyahoga County Sheriff's Department corporals—including Corporal Ciurlik—who booked and patted down Mr. Bethune at the county jail, and the ATF officer who submitted an affidavit for Mr. Bethune's criminal complaint.  (ECF No. 58, PageID #347–580.)  The police officers and Sheriff's Department corporals testified about video evidence and their DNA and fingerprinting procedures; and the officer who swore out the erroneous affidavit testified to its inaccuracy and about the ATF's DNA and fingerprinting procedures.  (*Id.*)

*Video evidence.*  As part of its direct examination of the CPD officers, counsel for the United States presented video footage of Mr. Bethune's arrest from the police officers' body cameras, including footage of the pat-down of Mr. Bethune outside the police car and of the officers' struggle with Mr. Bethune upon arrival at the county jail.  (*Id.*, PageID #380–86 & #433–55.)  The United States did not present body camera footage of the Sheriff's Department corporals' final pat-down search of Mr. Bethune inside the county jail.  Responding to a jury question after cross-examination, one of the corporals testified that the county jail does have cameras in the area where the final pat-down search occurred.  (*Id.*, PageID #486.)

*DNA and fingerprinting procedures.*  After the United States presented no DNA or fingerprint evidence, defense counsel interrogated the two police officers who

5

performed the pat-down of Mr. Bethune outside the police car about the procedures for DNA and fingerprinting. (*Id.*, PageID #409–412 & #460–463.) After the first police officer stated that he had no role in ordering DNA or fingerprinting analysis, the other officer testified that he did, but that it was not typical procedure to order fingerprints for ammunition that is found on a person. (*Id.*, PageID #465.) Both officers testified that they had no doubt about the individual to whom the firearm belonged. (*Id.*, PageID #417 & #460.)

Likewise, the ATF officer testified on direct and cross-examination that the policy of the police and medical examiner in cases involving the possession of firearms is not to submit evidence for DNA or fingerprint testing. (*Id.*, PageID #547 & #561–66.) The ATF officer emphasized that this principle is "even more true . . . when it's recovered on someone's person [that] possession is already established" and that "[y]ou don't need to waste a resource such as DNA or fingerprints when it's on a person." (*Id.*, PageID #547.) In the ATF officer's view, the "totality of the circumstances with the chain of custody" led him to believe that Mr. Bethune did possess the ammunition.

*The erroneous affidavit.* Both the United States and defense counsel asked the ATF officer why his affidavit erroneously stated that the firearm "was loaded with four live rounds." (*Id.*, PageID #561.) The ATF officer testified that when he submitted his affidavit and testified before the grand jury, he was operating under the assumption—consistent with his training and experience—that the firearm had been loaded with the magazine and ammunition because he received them loose in

6

the same evidence bag.  (*Id.*, PageID #551 & #563.)  The ATF officer explained that, although he later learned the actual circumstances of the magazine's separate identification one or two months after Mr. Bethune's indictment, there was still no basis for ordering fingerprint or DNA analysis under the applicable policies.  (*Id.*, PageID #562–66 & #570–74.)

Following the conclusion of the government's case-in-chief, the defense rested. (*Id.*, PageID #604.)  After jury instructions and deliberations, the jury returned a verdict of guilty.  (*Id.*, PageID #671.)

### D.    Sentencing and Direct Appeal

During Mr. Bethune's sentencing hearing on August 2, 2022, the Court asked Mr. Bethune if he was satisfied with the representation he received from defense counsel.  (ECF No. 59, PageID #683.)  Mr. Bethune responded, "Somewhat, your Honor, I mean not to say—somewhat, yes."  (*Id.*, PageID #684.)  Asked to clarify if he was satisfied enough to proceed with sentencing, Mr. Bethune then answered, "Yes." (*Id.*)  After the United States requested a sentence of 120 months' incarceration and defense counsel requested a sentence of 100 months' incarceration, the Court sentenced Mr. Bethune to a total prison term of 100 months.  (*Id.*, PageID #693, #696 & #703.)  Mr. Bethune appealed.  Several weeks after Mr. Bethune filed his appeal, defense counsel passed away.

On appeal, Mr. Bethune argued that the Court's decision to deny him a downward adjustment for acceptance of responsibility violated the Fifth and Sixth Amendments of the United States Constitution.  *United States v. Bethune*, No. 22-3688, 2023 WL 4204532, at *1 (6th Cir. June 27, 2023).  The Sixth Circuit held that

Mr. Bethune failed to establish plain error and affirmed his 100-month sentence. *Id.*, at *3.

### E.    Section 2255 Petition

In May 2024, Mr. Bethune filed this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (ECF No. 63-1.)  His sole claim is ineffective assistance of counsel against his trial counsel, alleging that she failed to:

(1)    "challenge the defective affidavit of arrest warrant" and "[the] defective indictment";

(2)    "submit magazine and bullet casings for fingerprint and DNA testing";

(3)    subpoena certain witnesses to the pat-down search;

(4)    subpoena Corporal Ciurlik's "body cam footage of his pat-down search" and surveillance video footage from the "inmate booking area" and the "dress out room area";

(5)    subpoena the Sheriff's Department's "policy and procedure [regarding whether] body cam must be turned on while officers are dealing with hostile inmates" and "question Corporal Ciurlik" at trial regarding such policy and procedure;

(6)    provide Mr. Bethune with certain written incident reports, introduce those reports "into the court record as evidence," and "cross-exam[ine] witnesses at trial on their written incident reports"; or

(7)    "have Ciurlik answer [a] specific question" from the jury regarding whether there was footage from the jail that would show the pat-down search.

(*Id.*, PageID #730–39.)

Petitioner contends that, but for these failings that rendered defense counsel's representation "prejudicially ineffective," the charges against him might have been

8

dismissed.  (*Id.*, PageID #740–41.)  Petitioner requests that the Court grant him an evidentiary hearing and grant his Section 2255 petition.  (*Id.*, PageID #742.)

## GOVERNING LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence.  To challenge his conviction, Section 2255 requires the federal prisoner's claim to fall into one of four circumstances:

> [1] [T]he sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a).

A petitioner seeking to challenge his conviction under Section 2255 "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

The Court liberally construes the allegations of a *pro se* Section 2255 petition. *McCormick v. Butler*, 977 F.3d 521, 528 (6th Cir. 2020) (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)).  "But the liberal-construction rule does not 'abrogate basic pleading essentials,' such as the requirement that a [Section] 2255 petitioner state the factual bases underpinning every claim for relief." *Jimenez v. United States*,

2022 WL 2610337, at *3 (6th Cir. July 8, 2022) (internal citation omitted).  Even if liberally construed, "conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under [Section] 2255."  *Gabrion v. United States,* 43 F.4th 569 (6th Cir. 2022) (quoting *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013)).

When a factual dispute arises in a Section 2255 proceeding, a court must hold an evidentiary hearing "unless the motion can be 'conclusively determined either by the motion itself or by the files and records in the trial court.'"  *MacLloyd v. United States*, 684 Fed. Appx. 555, 559 (6th Cir. 2017) (quoting *Machibroda v. United States*, 368 U.S. 487, 494 (1962)).  A petitioner is not entitled to an evidentiary hearing if he fails to allege any facts that, if true, would entitle him to federal habeas relief.  *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing).  Nor is a hearing necessary where a petitioner's claims "cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact."  *Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (quoting *Arredondo*, 178 F.3d at 782).

Finally, where, as here, the district court judge considering a Section 2255 motion also conducted the trial, "the judge may rely on his or her recollections of the trial."  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

10

Petitioner exhausted his appellate remedies and timely filed this motion under Section 2255. His sole claim for federal habeas relief is ineffective assistance of trial counsel. A claim that an attorney's ineffective assistance deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a Section 2255 proceeding. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Petitioner alleges that defense counsel's representation was constitutionally ineffective because she failed to (1) challenge the errors in the arrest warrant and indictment, (2) submit the magazine and bullet casings for DNA testing, (3) subpoena witnesses, (4) subpoena video footage of his pat-down at the county jail, (5) subpoena and cross-examine on policies related to body cameras, (6) provide him certain reports, and (7) cross-examine Corporal Ciurlik on whether there was footage of the pat-down in the jail. (ECF No. 63-1, PageID #730–40.)

## ANALYSIS

To prevail on his claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test that the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668 (1994). *See, e.g.*, *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020) (citation omitted).

First, Petitioner must show that his defense attorney's conduct was "deficient." *Strickland*, 466 U.S. at 687. Specifically, Petitioner must show that counsel's errors were so serious that she failed to "function[] as the 'counsel' that the Sixth Amendment guarantees to Petitioner." *Id.* at 687–88. Counsel enjoy a presumption that they discharge their duties in a sufficiently effective manner and exercise

11

reasonable professional judgment based on the circumstances at the time. *Id.* at 689–90. To establish error, Petitioner must overcome this "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* This means that courts should "resist the temptation to rely on hindsight . . . in the context of ineffective assistance of counsel claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir 2001).

Second, Petitioner must show that any deficiencies in his counsel's performance were "prejudicial" to his defense. *Id.* at 690. In other words, Petitioner must show that his counsel's decisions "were so serious as to deprive [him of] a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Monea v. United States*, 914 F.3d 414, 419 (6th Cir. 2019). Like the first *Strickland* element, establishing prejudice also presents a difficult burden because it requires Petitioner to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the [original] outcome." *Id.*

A successful ineffective assistance claim requires Petitioner to establish both elements. *Strickland*, 466 U.S. at 687, 697. Therefore, failure to establish either element will cause Petitioner's claim to fail.

## I. Failure to Challenge Errors in ATF Officer's Affidavit or Indictment

Petitioner's first ground for relief is that defense counsel's performance was constitutionally ineffective because she "failed to file [a] motion to challenge Bethune's arrest warrant" and "failed to file [a] motion to challenge Bethune's grand

jury indictment." (ECF No. 63-1, PageID #738–39.) He explains that defense counsel should have challenged the arrest warrant and indictment because the ATF officer's affidavit for probable cause erroneously described the gun found on Petitioner's person as "loaded with four bullets." (*Id*.; ECF No. 1-1, ¶ 5, PageID #2.) Petitioner notes that he asked defense counsel to "file a motion to suppress the defective [ ] arrest warrant, defective [ ] grand jury indictment, and magazine and bullets," but she did not do so. (ECF No. 63-1, PageID #740.)

Although prejudice is the second element under *Strickland* for an ineffective assistance of counsel claim, "[c]ourts need not address the first element if the petitioner cannot prove prejudice. In fact, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Monea*, 914 F.3d at 419 (cleaned up).

Petitioner is correct that the ATF officer's affidavit erroneously described the gun found on Petitioner's person as "loaded with four bullets." (ECF No. 1-1, PageID #5.) However, Petitioner fails to allege facts sufficient to show a "reasonable probability" that, but for counsel's failure to challenge the affidavit or the indictment, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Indeed, the ATF officer was cross-examined on the issue, and the jury asked questions about it as well. But the jury still returned a guilty verdict.

*First*, even if defense counsel filed a motion to challenge the affidavit for probable cause in this case, such as a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), the Court sees no "reasonable probability that . . . the result of

13

the proceeding would have been different." *Strickland*, 466 U.S. at 694. In *Franks*, the Supreme Court held that the Fourth Amendment requires a hearing where (1) the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. The substantial preliminary showing "must overcome the presumption that the affidavit was valid." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003). "[A] truthful showing of probable cause 'does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct.'" *United States v. Hawkins*, 969 F.2d 169, 177 (6th Cir. 1992) (quoting *Franks*, 438 U.S. at 165). Instead, "it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* (quoting *Franks*, 438 U.S. at 165) (citations and alterations omitted).

Insofar as Petitioner alleges that defense counsel should have challenged the affidavit because the ATF officer erred in his statement that the firearm was "loaded with four live rounds," he does not show that the ATF officer did not believe or appropriately accept the information as true. Indeed, as the ATF officer admitted during his testimony at trial, he submitted his affidavit for probable cause under the mistaken assumption that the firearm had been loaded with the magazine and four bullets because he received them in the same evidence bag.

*Second*, even if defense counsel had filed a motion to dismiss the indictment because of an error in the grand jury proceeding or a defect in the indictment or information, the Court finds no "reasonable probability that . . . the results of the proceeding would have been different." *Strickland*, 466 U.S. at 684. "[A]s long as there is some competent evidence to sustain the charge issued by the grand jury, an indictment will not be dismissed solely on the basis that other evidence presented to the grand jury may have been false or misleading." *United States v. Labbous*, 82 F.3d 419, at *2 (6th Cir. 1996) (cleaned up). Petitioner points to the ATF officer's erroneous testimony before the grand jury that the firearm found on his person was "loaded with four bullets" as the reason defense counsel should have filed a motion to dismiss the indictment. But there is no reason to think that the circumstances of the precise location of the bullets allegedly found on his person—whether inside or outside the firearm—would have affected the grand jury's decision to indict on the charge of possession of ammunition.

*Third*, Petitioner was not prejudiced by the alleged error of failing to challenge the affidavit or the indictment because the United States used no evidence obtained directly from the ATF officer's affidavit, or the ATF officer's testimony to the grand jury, to secure Mr. Bethune's conviction at trial. Instead, when counsel for the United States called the ATF officer to testify at trial, the prosecutor asked him how he received custody of the firearm and ammunition, how he assumed the firearm had been loaded with the ammunition when he received them loose in the same evidence bag, and why he did not submit them for DNA and fingerprint testing. (ECF No. 58,

PageID #544–60). On cross-examination, defense counsel also asked the ATF officer about his errant affidavit and testimony to the grand jury that "the firearm was loaded with four live rounds." (*Id.*, PageID #560.) The ATF officer testified that, when he submitted his affidavit and testified before the grand jury, he was operating under the erroneous assumption that the firearm found on Mr. Bethune's person had been loaded with the magazine and rounds because he received them in the same evidence bag. (*Id.*, PageID #551 & #563.) Further, he testified that he learned the actual facts approximately one to two months *after* Mr. Bethune's indictment. (*Id.*, PageID #563.) Petitioner has not overcome the "strong presumption" that defense counsel's decision not to seek a *Franks* hearing, but instead to cross-examine the ATF officer about his affidavit on the witness stand, can "be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

*Fourth*, and relatedly, the United States presented its case at trial only on the theory that the Cuyahoga County Sheriff's Department corporal found the ammunition on Mr. Bethune's person in the final pat-down at the county jail. At no time during the trial did the United States suggest that any police officer found the ammunition loaded in the firearm confiscated from Mr. Bethune's person. In its opening statement, the United States told the jury that it would hear evidence that while conducting a pat-down of Mr. Bethune as part of the intake process at the county jail, a corporal with the Cuyahoga County Sheriff's Department found a firearm magazine containing four rounds of ammunition in Mr. Bethune's right pants pocket. (ECF No. 58, PageID #344.) During direct examination, the United States

16

also questioned the police officers, the corporals from the Cuyahoga Sheriff's Department, and the ATF officer about where the ammunition was found.  (*Id.*, PageID #386, #426, #449, #478, #505 & #551.)  Each testified that the ammunition was found not in the firearm confiscated from Mr. Bethune's person, but instead during the later pat-down search at the county jail.  (*Id.*)

For all of the foregoing reasons, Petitioner is not entitled to relief on the basis of defense counsel's alleged ineffectiveness in failing to challenge the affidavit or the indictment.

## II.    Failure to Obtain DNA or Fingerprint Testing of Magazine and Bullets

Petitioner's second ground for relief is that defense counsel rendered ineffective assistance because she "failed to submit [the] magazine and bullet casings to [the] lab for fingerprints and/or DNA testing."  (*Id.*, PageID #738.)

As an initial matter, Petitioner does not clearly elaborate how, but for defense counsel's alleged error in failing to submit the magazine or ammunition for DNA or fingerprint testing, there is a "reasonable possibility that . . . the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Mr. Bethune was charged with being a felon in *possession* of ammunition. Therefore, it was not necessary that the government prove that he owned the ammunition, or even that he previously touched the ammunition.  For the purposes of 18 U.S.C. § 922(g)(1), the United States needed to prove only that the defendant possessed the ammunition, either through actual or constructive possession.  *See United States v. Murphy*, 107 F.3d 1199, 1208 (6th Cir. 1997).

More importantly, it is clear that defense counsel intended to use the absence of any DNA or fingerprint evidence to discredit the investigation at trial. On cross-examination of two of the police officers who arrested Mr. Bethune, and later on cross-examination of the affiant ATF officer, defense counsel asked about the procedures for DNA testing and fingerprinting. (ECF No. 58, PageID #409–12, #460–63, & #565–66.) In her closing argument, defense counsel asked, "Do you think that scientific tests take that long anymore? No. They could have easily [finger]printed this magazine. . . . These officers created this problem, but you know what? They have taken you for granted. You weren't important enough for them to do their job thoroughly." (*Id.*, PageID #638.) Later in her closing, defense counsel reemphasized her point:

> [ATF] Agent Norman says 'it's our policy. We don't [DNA or fingerprint] test the simple possession cases.' But that's only if you find the evidence on the person, at the time. And again, I agree, it isn't necessary if you do, but they did not. What would it have taken for [ATF] Agent Norman to submit that magazine for one simple test? Nothing. Particularly when it wasn't with [Mr. Bethune] at the time.

(*Id.*, PageID #641.) Petitioner has not overcome the "strong presumption" that defense counsel's decision to leverage the absence of DNA testing and fingerprinting can "be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Defense counsel's legitimate trial strategy of emphasizing purported deficiencies in the investigation is "entitled to deference in the absence of any evidence that it was unreasonable." *United States v. Mickel*, No. 1:20-cr-159, 2024 WL 2081020, at *7 (N.D. Ohio May 9, 2024). "Trial counsel's tactical decision to attack the lack of thoroughness of the officers' investigation and not to do their investigation for them

18

by seeking DNA on her own cannot be said to be unreasonable." *Common v. United States*, No. 1:12-cr-82, 2018 WL 4604018, at *4 (E.D. Tenn. Sept. 25, 2018). Therefore, the record conclusively shows that Mr. Bethune is not entitled to relief based on defense counsel's alleged ineffectiveness in deciding not to obtain fingerprint and DNA testing of the magazine or ammunition.

## III. Failure to Subpoena Witnesses of the Pat-Down Search at the Jail

Petitioner's third ground for relief is that defense counsel rendered ineffective assistance because she "failed to subpoena witnesses [to the] pat-down on Bethune at the county jail." (ECF No. 63, PageID #730.) Specifically, Petitioner argues that defense counsel "failed to subpoena Corporal Brunello to testify at [the] trial to what he had witnessed of the pat-down search of Bethune by Corporal Ciurlik and w[h]ere the pat-down took place in the jail." (*Id.*, PageID #732.) Petitioner also faults defense counsel for "fail[ing] to subpoena the officer who was in-charge of [the] dress out room and who issues clothe[s] out to inmates." (*Id.*, PageID #738.) He notes that he asked defense counsel to subpoena these witnesses, but "to no avail." (*Id.*, PageID #738.)

On one hand, "the decision to call a witness is a 'classic question[ ] of trial strategy that merit[s] *Strickland* deference," *Givhan v. United States*, No. 22-5098, 2022 WL 18670368, at *3 (6th Cir. 2022) (citation omitted). Therefore, "complaints about uncalled witnesses are disfavored." *Mikel*, 2024 WL 2081020, at *10 (citations omitted). Moreover, "a defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation marks and citation omitted).

19

On the other hand, a "lawyer's *Strickland* duty 'includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.'" *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). The Sixth Circuit holds that trial counsel performs deficiently when she chooses not to present witness testimony based on unreasonably inadequate investigation and preparation. *See English v. Romanowski*, 602 F.2d 714 (6th Cir. 2010) (holding that, although counsel's ultimate decision not to call a specific witness was not an unreasonable trial strategy, it constituted deficient performance because the decision was based on counsel's unreasonable decision not to investigate and interview the witness prior to trial); *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Rayner v. Mills*, 685 F.3d 631, 640 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 691).

Additionally, where the petitioner predicates an ineffective assistance of counsel claim on a failure to call a witness, he "must provide the substance of the missing witnesses' potential testimony." *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Otherwise, the petitioner cannot establish that his counsel performed deficiently, or that he was actually prejudiced. *Id*.

Here, Petitioner does not specifically allege that defense counsel failed to adequately investigate the case and prepare for trial, such as by failing to interview the witnesses he says she erred in not calling to the stand. Nor does he state how the

testimony of Corporal Brunello or the officer who was in charge of the dress-out area would have exculpated him. Rather, Petitioner argues that Corporal Brunello could have "testif[ied] at trial to what he had witnessed of the pat-down search of Bethune by Corporal Ciurlik." (ECF No. 63-1, PageiD #732.) Based on the record, the Court does not see, and Petitioner does not offer, a reason to believe that the testimony of Corporal Brunello and the other officer in charge of the dress-out area would have contradicted or undermined that of their colleagues. Accordingly, these claims fail to establish ineffective assistance of counsel.

## IV. Failure to Subpoena Video Footage of the Pat-Down Search

Petitioner's fourth ground for relief is that defense counsel's representation was constitutionally ineffective because she failed to subpoena various pieces of body camera and security video footage from the county jail, which he argues would have shown Officer Ciurlik's pat-down search of Mr. Bethune. (*Id.*, PageID #730–38.) Specifically, Petitioner alleges that defense counsel rendered ineffective assistance of counsel because she failed to:

[1] "subpoena Corporal Ciurlik['s] body cam footage of his pat-down search of Bethune in the intake booking area and/or intake dress out room area";

[2] "subpoena the video footage of [the] inmate booking area to see if Corporal Ciurlik patted-down Bethune and removed a magazine from his right front pocket"; and

[3] "subpoena video footage of [the] intake dress out room area to see if Corporal Ciurlik entered the room to pat-down Bethune and remove a magazine from his right front pocket."

(*Id.*, PageID #732–35.) Petitioner claims that he asked defense counsel to subpoena such video footage, but she did not do so. (*Id.*, PageID #738.)

During pretrial case management, the Court discussed discovery several times with the United States and defense counsel.  Each time the Court gave the United States and defense counsel an opportunity to raise issues related to discovery they declined to do so, aside from defense counsel's requests for more time to review the discovery with her client.  During two separate status conferences before trial, the United States informed the Court that it had produced all its discovery.  When the Court asked defense counsel to confirm, deny, or otherwise correct the assertion that all discovery had been turned over, she confirmed on both occasions.  And during the final pretrial conference, Mr. Bethune informed the Court that he was satisfied with defense counsel's representation.

In cross-examination, defense counsel asked Corporal Ciurlik if he wore a body camera, to which Corporal Ciurlik replied, "Yes, ma'am, we do."  (ECF No. 58, PageID #487.)  Throughout closing argument, defense counsel emphasized that the jury had not seen evidence showing the magazine's complete chain of custody and advanced the theory that the United States "expect[ed the jury] to convict [Mr. Bethune] on their word alone."  (ECF No. 58, PageID #638; *see also id.*, PageID #639 ("Again, they want you to convict Brandon because they say so.").)  The record indicates that defense counsel elected not to subpoena additional video footage so that she could use the absence of such footage to highlight a deficiency in the prosecution's investigation and to cast doubt that the United States carried its burden of proof beyond a reasonable doubt—a tactical decision that is not manifestly unreasonable.

Courts "apply[] a heavy measure of deference to counsel's judgments" regarding trial strategy. *Strickland*, 466 U.S. at 691. "To the extent that [Petitioner] believes his counsel should have undertaken a different strategy in conducting the investigation and determining how best to advocate on [his] behalf, these are tactical decisions that cannot form the basis for an ineffective assistance claim." *Buell v. Mitchell*, 274 F.3d 337, 360 (6th Cir. 2001).

## V.  Failure to Subpoena and Cross-Examine on Body Camera Policy

Petitioner argues that his counsel was ineffective in failing "to subpoena the Sheriff's Dep't policy and procedure to see if body cam must be turned on while officers are dealing with hostile inmates" and to question Corporal Ciurlik regarding that policy and procedure during trial. (ECF No. 63-1, PageID #733.) Presumably, Petitioner believes that Corporal Ciurlik did not comply with that policy.

This argument fails both prongs of *Strickland*. First, it was not objectively unreasonable for defense counsel to choose to introduce doubt simply by presenting the fact that Corporal Ciurlik wore a body camera (ECF No. 58, PageID #487), together with the absence of body camera footage in evidence, to the jury. Defense counsel's tactical decision not to engage Corporal Ciurlik over the details of Department policy—which might have confused the jury, obscured the impact of her point, or provided him an opportunity to explain or minimize his actions—was a legitimate trial strategy.

Second, Petitioner does not establish prejudice as a result of defense counsel's decision. The jury convicted despite the attention that defense counsel did draw to the absence of video footage. Given the quantity of evidence presented at trial, there

was not "a reasonable probability that," but for introduction of the Sheriff's Department's body camera policy, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Therefore, Petitioner cannot maintain an ineffective-assistance claim on this basis.

## VI. Failure to Provide and Use Incident Reports

In his sixth ground for relief, Petitioner maintains that defense counsel did not provide him with investigation or incident reports written by police officers and Corporal Brunello, introduce those reports into the record as evidence, or cross-examine officers at trial based on their written incident reports. (ECF No. 63-1, PageID #731–34.)

Again, Petitioner does not meet his burden of showing a reasonable probability that, but for these omissions, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. If the reports had been inculpatory or consistent with the officers' testimony, introducing them at trial would not have benefitted Petitioner's defense. And Petitioner offers no reason to believe that the reports are exculpatory or inconsistent with testimony at trial.

## VII. Failure to Ask Juror Question

Finally, Petitioner contends that defense counsel "failed to have Ciurlik answer the specific question by the court, 'Is there footage that would specifically show his pat-down search on Bethune in the jail.'" (ECF No. 63-1, PageID #736.)

After Corporal Ciurlik testified, the Court provided jurors an opportunity to ask him questions of their own. (ECF No. 58, PageID #483–84.) Summarizing two questions that jurors submitted to the Court, the Court asked: "Is there other footage

24

available from that area of the jail and is there footage that would specifically show the pat-down search that you performed?" (*Id.*, PageID #486.) Corporal Ciurlik responded, "The county does have cameras in those areas, and I do believe there is a camera like right over that desk." (*Id.*)

Accordingly, Corporal Ciurlik testified to the existence of footage that might show his pat-down search in the jail. Petitioner does not explain why it was unreasonable for defense counsel not to repeat the question, or why a repetition of the question might have affected the outcome of the trial. To the extent that Petitioner means to argue that defense counsel should have asked the question before the Court did, his argument necessarily fails the prejudice prong of *Strickland*—the question was asked. Petitioner does not suggest any reason to believe that prejudice resulted from the witness answering that question from the Court rather than defense counsel. Therefore, this claim for ineffective assistance fails.

## CERTIFICATE OF APPEALABILITY

Without a certificate of appealability, a habeas petitioner cannot appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1). Issuance of a certificate of appealability requires a petitioner to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This means that the petitioner must show that reasonable jurists would find the district court's determination of the relevant constitutional claims debatable or incorrect. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). The petitioner need not show that the appeal would succeed to be eligible for a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337

(2003).  Based on the deferential standard under *Strickland*, the Court doubts that reasonable jurists would reach a contrary determination.  In light of the fact-intensive nature of claims involving ineffective assistance of counsel, however, reasonable jurists might fairly debate the issues.  Therefore, the Court **GRANTS** a certificate of appealability.

## CONCLUSION

The record establishes that Petitioner received representation that satisfies his Sixth Amendment right to counsel.  Accordingly, the Court **DENIES** Petitioner's motion to vacate his sentence under 28 U.S.C. § 2255 and determines that an evidentiary hearing is not warranted.  Pursuant to 28 U.S.C. § 2253, the Court **GRANTS** a certificate of appealability.

**SO ORDERED**.

Dated:  November 24, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

26